## A11A1944. BRIGHT v. THE STATE.
(725 SE2d 327)

PHIPPS, Presiding Judge.

Following a jury trial, Roy Bright was convicted of burglary. He filed a motion for new trial, urging general grounds, which he later amended and particularized. The court denied the amended motion, and Bright filed a notice of appeal. On appeal, Bright contends that the trial court erred by admitting evidence of similar transactions and by admitting hearsay evidence, and that his trial counsel rendered ineffective assistance. For the reasons that follow, we affirm.

> We view the evidence on appeal in the light most favorable to the verdict and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility but only determine if the evidence is sufficient to sustain the convictions. We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict.[1]

Viewed in that light, the evidence showed that at around 9:00 p.m. on November 20, 2008 a security officer at a condominium complex of newly constructed units was performing a check of one of the buildings when he saw a minivan backing into the garage of a unit in the building next door. He watched as the garage door lowered after the minivan entered. A few minutes later, the lights went out in the entire unit. The security officer testified that the entire building (in which the unit was located) was unoccupied and that no one was authorized to be in the unit, which was awaiting sale and contained appliances such as a washing machine, refrigerator, stove, microwave, and dishwasher.

The security officer radioed for backup, and two officers arrived within ten to fifteen minutes. As they approached the unit, one of the

---

[1] *Ellis v. State*, 282 Ga. App. 17, 18 (1) (637 SE2d 729) (2006) (citations omitted).

backup officers went to the rear, and the security officer and the other backup officer went to the front. The security officer knocked on the front door, identified himself, and ordered any individuals inside to come out. There was no response, and he advised again. And again, there was no response. Both officers then went from the front door to the garage door. The security officer opened the door and saw the minivan in the garage. Using their flashlights, they checked the garage and determined that there was no one inside the vehicle or in the garage. The backup officer observed, however, that the rear seats of the van were folded down, increasing the amount of room in the vehicle. The officers entered the kitchen and foyer area of the unit through the garage door. Still using their flashlights, they cleared the bottom floor and determined that there was no one downstairs in the unit.

The security officer then went back into the garage and turned switches on the circuit breaker; the lights in the unit came back on. The officers went back inside and noticed that located on the kitchen counter top were some tools, including pliers, screwdrivers, and gloves, which had not been there when the security officer had earlier in the evening conducted an inspection of the unit. Construction in the unit appeared to be complete, and there was no apparent reason for these tools to be there. The officers opened the back patio door to allow the other backup officer to enter the unit.

The security officer identified himself and gave loud, verbal commands for anyone inside to "put your hands up and come out." There was no response. All three officers proceeded up the stairs, with the security officer still identifying himself and ordering anyone inside to come out. After the third loud command, a man's voice could be heard saying "we know, we give up." When the officers arrived upstairs, they entered a bedroom, where Bright and another man came out of a closet and lay down on the floor. Both men were arrested.

At trial, the court permitted the state to present similar transaction evidence concerning two incidents: one from Fulton County, another from Forsyth County. The evidence of the Fulton County transaction showed that on February 12, 2010, police officers responded to a "possible burglary in progress" call at a vacant, newly constructed house that "had appliances and everything ready to be sold." Upon arrival, they exited the patrol vehicle, walked up to the residence and observed that the front door was open and appeared to have been kicked in. The officers entered the house and saw Bright and another individual inside the garage. A vehicle was inside the garage, and in it were two toilets and two five-gallon buckets of paint, all belonging to the vacant house. Inside the house, next to the kitchen sink, the officers found a black bag containing tools such as

screwdrivers, wrenches, pipes, a crowbar, and a flashlight. There appeared to have been an attempt to steal the garbage disposal located underneath the sink.

The evidence of the Forsyth County transaction showed that in September 2009, an officer responded to a report of a burglary of a home, described as a "finished construction" for sale by the builder. The back door appeared to have been "breached . . . by force." The perpetrators were unknown. New appliances from inside the home had been removed. Crime scene technicians processed the scene, and shoe prints were photographed and lifted. One officer who observed the prints testified that the shoe prints were very defined and detailed. He testified that the pattern on the print was a "repeating zig zag type pattern" with two lines across the zig zags, forming a frame around the word "Rhingo." The officer later interviewed Bright (at a different location) and observed that the bottom of his shoes matched the shoe print he had observed at the burglarized home. The officer testified that upon receiving an expert comparison of the shoe print and Bright's shoes, he obtained a warrant for Bright's arrest.

1. Bright contends that the trial court erred in admitting the similar transaction evidence. He argues that the notice was insufficient as to both incidents and that the evidence was insufficient to establish that he committed the Forsyth County incident. We will not disturb a trial court's determination that similar transaction evidence is admissible absent an abuse of discretion.[2]

(a) Bright contends that as to both the Fulton County and Forsyth County incidents, the similar transaction notice was insufficient because it did not include the names of the victims or copies of the indictments. Bright contends that particularly as it concerns the Fulton County incident, the notice was additionally insufficient because it did not list Fulton County as the county where the incident occurred; but instead listed "APD." Bright points out that the case number for both incidents was incorrect, "so that defense counsel could not . . . use them to find the omitted information."

Georgia Uniform Superior Court Rule (USCR) 31.3 (B) pertinently requires that notice of the prosecution's intent to present evidence of similar transactions "shall state the transaction, date, county, and the name(s) of the victim(s) for each similar transaction or occurrence sought to be introduced. Copies of accusations or indictments, if any, and guilty pleas or verdicts, if any, shall be attached to the notice." "The purpose of the notice requirement contained in USCR 31.3 is to provide a criminal defendant adequate

---

[2] *Ellis*, supra at 22 (3).

notice of the state's intent to use similar transactions to enable the defendant to resolve questions regarding admissibility of such evidence before trial."[3]

In this case, the notice was comprised of a chart with four columns and headings as follows: "Defendant," "Arrest," "Case Number," and "Disposition." Six rows were filled in beneath the headings; the last two are at issue here.

On the fifth row, in the column designated "Defendant," the word "Bright" was typed. In the column designated "Arrest," the following was typed: "Burglary; Forsyth 09/08/09." In the column designated "Case Number," the following was typed: "B00055180." In the column designated "Disposition," the following was typed: "Unknown at this time."

On the sixth row, in the column designated "Defendant," the word "Bright" was typed. In the column designated "Arrest," the following was typed: "Burglary, APD 02/12/10." In the column designated "Case Number," the following was typed: "1004395." In the column designated "Disposition," the following was typed: "Unknown at this time." No copies of accusations, indictments, guilty pleas, or verdicts were attached to the notice. The prosecutor stated that the state provided the defense with a copy of Bright's Georgia Crime Information Center report of his criminal history; the defense did not refute this statement.

The state failed to fully comply with USCR 31.3 (B) in that the notice it gave as to both incidents did not state the victims' names and did not include copies of indictments. And as to the Fulton County incident, the notice did not state the county where the transaction occurred. Bright argues that "[w]ithout this particular knowledge, defense counsel could not adequately raise questions as to the admissibility of the evidence sought to be admitted, thus frustrating the purpose of the Rule," which requires the state to provide the information. However, the state's failure to fully comply with USCR 31.3 (B) "does not require automatic reversal or exclusion of the similar transaction evidence, but is subject to testing for harm."[4]

Here, at the motion for new trial hearing, trial counsel testified that prior to trial he discussed the case with his client and did not recall being surprised by anything his client said to him. They had opportunities to discuss trial strategy and for Bright to tell his trial counsel of any witnesses he wanted at trial. Counsel testified that he

---

[3] *Brown v. State*, 307 Ga. App. 99, 102-103 (2) (b) (704 SE2d 227) (2010) (footnote omitted).

[4] *Ellis*, supra at 23 (3) (a) (citation and punctuation omitted).

had not sought to obtain the incident reports from the similar transaction arresting agencies although, as a former Fulton County prosecutor, he knew how to do so. As to the designation of "APD" regarding the Fulton County similar transaction, the trial attorney stated during trial that he assumed it meant the Atlanta Police Department, and he testified at the motion for new trial hearing that Bright had informed him of prior burglary arrests in Fulton County.[5]

The trial court found that because the victims of the similar transactions were corporate entities that owned all of the newly constructed homes in their respective subdivisions, the state's failure to provide the names of the corporations was of little or no consequence because the corporations could not be interviewed or called to the stand. And although a representative from the corporate entities could have testified, at trial there was no testimony from any representatives. Consequently, Bright failed to demonstrate any harm by the state's failure to provide the names of the corporate entities in the similar transaction notice.[6]

The fact that the incident report numbers were incorrect is of no consequence because the rule does not require that the state provide that information. In any event, it would not have made a difference because trial counsel testified that he had not sought to obtain copies of the reports from the arresting agencies. Indeed, counsel testified that when the case was called to trial part of his trial strategy was to go forward with the trial because it appeared to him that the prosecution was not prepared and may have been unaware of additional burglary similar transactions that could be introduced. Thus, the evidence did not show that the incorrect incident report numbers rendered Bright unable to obtain the police reports to adequately raise questions as to the admissibility of the evidence sought to be admitted.[7]

Concerning the state's failure to attach copies of indictments,

---

[5] See *Parrish v. State*, 237 Ga. App. 274, 279-280 (4) (514 SE2d 458) (1999) (trial court did not err in admitting similar transaction evidence where state's notice to the defendant indicated the year of the offense, the nature of the offense, and that the victim was the defendant's ex-wife; notice failed to provide the location and county where the offense occurred; although not in technical compliance with the rule, the state's notice served the purpose of the rule, to provide the defendant fair and adequate notice of the listed transaction so that questions of admissibility may be raised and addressed prior to trial).

[6] See *Fitz v. State*, 275 Ga. App. 817, 821-822 (2) (a) (622 SE2d 46) (2005) (no harm in admitting similar transaction evidence where the state's notice of intent to introduce a similar transaction notice failed to list two of the victims of the prior burglaries who later testified at trial; the state disclosed its intent to call them as witnesses during the pre-trial similar transaction hearing; thus, defendant had the requisite notice to satisfy the purpose of the rule and was not harmed by the omissions) (reversed on other grounds by *Schofield v. Holsey*, 281 Ga. 809, 812 (II), n. 1 (642 SE2d 56) (2007).

[7] See *Parrish*, supra.

the rule requires that they be attached "if any." The trial court found it was undisputed that at the time the state served notice of its intent to introduce evidence of similar transactions, neither the Fulton County case nor the Forsyth County case had been indicted, so there were no indictments to provide to the defense. No evidence was presented to the contrary. The court found, and the record showed, that the state's motion provided as much information as the state possessed at the time.[8] The trial court did not abuse its discretion in admitting the similar transactions evidence on this ground.

(b) Bright contends the trial court erred in admitting evidence of the Forsyth County transaction because evidence of "only the single shoeprint" was insufficient to establish that he committed the crime.

For evidence of independent offenses or acts to be admitted at trial, the State must establish three things at a hearing: (1) the evidence must be introduced for a proper purpose; (2) the evidence must establish by a preponderance of the evidence that the defendant perpetrated the similar transaction; and (3) the two transactions must be sufficiently similar or connected so that the existence of the former transaction tends to prove the latter transaction.[9] Here, Bright argues that the second element was not met.

> Harm as well as error must be shown when similar transaction evidence is improperly admitted. Where there is strong evidence of the defendant's guilt, such that it is highly unlikely that the admission of similar transaction evidence contributed to the verdict, the admission of improper evidence is harmless error.[10]

Given Bright's unauthorized presence in the closet of a vacant, newly constructed home which was awaiting sale and contained valuables;[11] the presence of a van with its rear seats folded down, backed into the garage of the home; Bright's refusal to initially show himself upon demand by the officer; the presence of recently placed tools for the commission of a crime near the entry of the home; and the properly admitted similar transaction evidence that Bright had been caught with similar tools after an unauthorized entry of another vacant, newly constructed home in Fulton County with

---

[8] See, e.g., *Ramsey v. State*, 214 Ga. App. 743, 745 (2) (448 SE2d 790) (1994).

[9] *Willis v. State*, 287 Ga. 703, 707 (4) (699 SE2d 1) (2010).

[10] *Holden v. State*, 314 Ga. App. 36, 39 (2) (722 SE2d 873) (2012) (punctuation and footnote omitted).

[11] See *Thompson v. State*, 271 Ga. 105, 107 (1) (519 SE2d 434) (1999) (evidence of an accused's unlawful entry into a building where valuable goods are stored may give rise to an inference of an intent to commit a theft therein, particularly where no other motive is apparent for the entry); *Phagan v. State*, 243 Ga. App. 568, 570 (2) (533 SE2d 757) (2000).

fixtures from that home in his vehicle, it is highly probable that the Forsyth similar transaction evidence, even if admitted in error, did not contribute to the verdict.[12]

2. Bright contends that the trial court erred by admitting hearsay evidence when a witness was allowed to answer the following question: "And based on the results of [the crime lab's shoeprint analysis] what, if anything, did you do?" The witness, an investigator for the Forsyth County similar transaction, responded that he had obtained warrants for Bright's arrest.

We find that any error by the trial court would constitute harmless error because, as stated above in Division 1, it is highly unlikely that the admission of the Forsyth County similar transaction evidence contributed to the jury's finding of guilt.[13]

3. Bright contends that concerning the admission of the Forsyth County similar transaction, his trial attorney rendered ineffective assistance by failing to renew an objection at trial, by failing to clarify an objection to hearsay, and by failing to object on additional grounds.

To succeed on this claim, Bright was required to show both that his counsel was professionally deficient in failing to make the objections and that there is a reasonable probability that the verdict would have been more favorable to Bright if they had been made.[14] Because any possible error regarding the similar transaction was harmless, however, this enumeration is without merit.[15]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED MARCH 5, 2012.

*Gerard B. Kleinrock*, for appellant.
*Robert D. James, Jr., District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.

---

[12] *Holden,* supra at 39 (2); *Satterwhite v. State,* 250 Ga. App. 313, 316-317 (2) (b) (551 SE2d 428) (2001); *Dixon v. State,* 240 Ga. App. 644, 647 (1) (e) (524 SE2d 734) (1999); *Carr v. State,* 251 Ga. App. 117, 118 (1) (553 SE2d 674) (2001) (physical precedent only).

[13] *Holden,* supra at 40 (3).

[14] *Brown v. State,* 288 Ga. 902, 907 (5) (708 SE2d 294) (2011).

[15] *Dixon,* supra at 647 (2).